1  David C. Powell (SBN 129781)
   Email: dpowell@reedsmith.com
2  Heather B. Hoesterey (SBN 201254)
   Email: hhoesterey@reedsmith.com
3  REED SMITH LLP
   101 Second Street, Suite 1800
4  San Francisco, CA 94105-3659
   Telephone: +1 415 543 8700
5  Facsimile: +1 415 391 8269

6  Attorneys for Defendants
   Wells Fargo Bank, Ltd., Wells Fargo
7  Investments, LLC, Wells Fargo Private
   Investment Advisors, LLC, Wells Fargo
8  Brokerage Services, LLC, and Wells
   Fargo Institutional Securities, LLC

9

10         UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA

12  JUAN DMITRUK, an individual,          Case No. CV09-7734 MMM VBKx

13                 Plaintiff,             NOTICE OF REMOVAL
                                          PURSUANT TO 28 U.S.C. §§ 1331,
14        vs.                             1337, 1441, AND 1446

15  WELLS FARGO BANK, LTD., a
    California Corporation; WELLS FARGO
16  INVESTMENTS, LLC; WELLS FARGO
    PRIVATE INVESTMENT ADVISORS,
17  LLC; WELLS FARGO BROKERAGE
    SERVICES, LLC; WELLS FARGO
18  INSTITUTIONAL SECURITIES, LLC;
    and DOES 1 through 100, inclusive,
19
                   Defendant.
20

21

22       TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

23  CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS

24  ATTORNEYS OF RECORD:

25

26       PLEASE TAKE NOTICE that defendants Wells Fargo Bank, Ltd., Wells Fargo

27  Investments, LLC, Wells Fargo Private Investment Advisors, LLC, Wells Fargo

28  Brokerage Services, LLC, and Wells Fargo Institutional Securities, LLC (collectively

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  "Defendants") hereby remove the above-entitled civil action from the Superior Court

2  of the State of California, County of Los Angeles, where it is now pending as Case

3  No. BC 417020, to the United States District Court for the Central District of

4  California, pursuant to 28 U.S.C. Sections 1331, 1337, 1441, and 1446, and allege that

5  removal is proper on the following grounds:

6

7        1.      On September 9, 2009, plaintiff Juan Dmitruk ("Plaintiff") filed the

8  above-entitled action in the Superior Court of the State of California, County of Los

9  Angeles.  The County of Los Angeles is within this judicial district.

10

11       2.      Defendants were served with the summons and First Amended

12 Complaint on or after September 25, 2009.  Thirty days since notice and service has

13 not yet expired.

14

15       3.      Defendants are informed and believe that DOES 1 through 100 are

16 defendants sued under fictitious names and have not as yet been served.

17

18       4.      This action is a civil action within the original jurisdiction of this Court

19 based on federal question jurisdiction in that the claims asserted in the First Amended

20 Complaint arise under the laws of the United States and raise a federal question as to

21 which federal question jurisdiction exists.  The federal statutes and regulations in

22 question include, without limitation, the Securities Exchange Act of 1934 ("the

23 Exchange Act"), 15 U.S.C. § 78a *et seq.*  Specifically:

24

25       a.      Plaintiff's First Amended Complaint alleges plaintiff's claims

26 "arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the

27 'Exchange Act'), 15 U.S.C. § 78j(b) and 78t, Rule 10b-5, and 15 C.F.R. § 240.10b-

28 5...."  *See* FAC ¶ 12.  Plaintiff alleges causes of action against Defendants for

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 2 –

US_ACTIVE-102451077.3

1  Violation of Section 10(b) of the Exchange Act (*see* FAC at pp. 14-15) and (2)

2  Violation of Section 20(a) of the Exchange Act (*see* FAC at pp. 15-16).

3

4        b.     Actions for alleged violations of the Exchange Act are within the

5  exclusive jurisdiction of this Court.  15 U.S.C. § 78aa provides:

6            The district courts of the United States and the United States

7            courts of any Territory or other place subject to the jurisdiction
          of the United States shall have exclusive jurisdiction of

8            violations of this title [15 U.S.C. §§ 78a *et seq.*] or the rules and
          regulations thereunder and of all suits in equity and actions at

9            law brought to enforce any liability or duty created by this title
          [15 U.S.C. §§ 78a *et seq.*] or the rules and regulations

10            thereunder. ...

11  15 U.S.C. § 78aa; *see also* 28 U.S.C. § 1331 ("The district courts shall have

12  original jurisdiction of all civil actions arising under the Constitution, laws, or

13  treaties of the United States"); 28 U.S.C. § 1337(a) ("The district courts shall

14  have original jurisdiction of any civil action or proceeding arising under any

15  Act of Congress regulating commerce or protective trade and commerce

16  against restraints and monopolies.")

17

18        c.     The Complaint is further removable because Plaintiff's

19  state law claims arising under Cal. Corp. Code §§ 25401 and 25216 are

20  transactionally related and supplemental to the federal claims.  *See* 28 U.S.C.

21  § 1367(a) ("... in any civil action of which the district courts have original

22  jurisdiction, the district courts shall have supplemental jurisdiction over all

23  other claims that are so related to claims in the action within such original

24  jurisdiction that they form part of the same case or controversy under Article

25  III of the United States Constitution.")

26

27       5.     This civil action is therefore removed to the United States District Court

28  for the Central District of California on the basis of federal question jurisdiction

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-102451077.3

1   pursuant to 28 U.S.C. §§ 1331, 1337, 1441 and 1446 and 15 U.S.C. § 78aa.

2

3       6.     Attached hereto as Exhibit A is a true and correct copy of the First

4   Amended Complaint, served on September 25, 2009 (and other documents served on

5   Defendants therewith), in this civil action in the Superior Court.

6

7       7.     Attached hereto as Exhibit B is a true and correct copy of the Notice of

8   Case Management Conference dated September 28, 2009 in this civil action in the

9   Superior Court.

10

11       8.     Attached hereto as Exhibit C is a true and correct copy of Plaintiff's Case

12   Management Conference Statement dated October 9, 2009 in this civil action in the

13   Superior Court.

14

15       9.     A Notice to Adverse Parties of Removal to Federal Court is concurrently

16   being filed with the Superior Court for the State of California, County of Los Angeles,

17   and being served on Plaintiff.

18

19       DATED:  October 23, 2009.

20                         REED SMITH LLP

21

22                   By

23                     Heather B. Hoesterey
Attorneys for Defendants Wells Fargo Bank,

24                     Ltd., Wells Fargo Investments, LLC, Wells
Fargo Private Investment Advisors, LLC,

25                     Wells Fargo Brokerage Services, LLC, and
Wells Fargo Institutional Securities, LLC

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-102451077.3

NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1331, 1337, 1441, AND 1446

# EXHIBIT A

THOMAS V. GIRARDI - BAR NO. 36603
NEYLEEN S. BELJAJEV - BAR NO. 251589
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211

Attorneys for Plaintiff JUAN DMITRUK



CONFORMED COPY
OF ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 09 2009

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
   RUCENA LOPEZ

RECEIVED

SEP 1 4 2009

REED SMITH LLP

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| JUAN DMITRUK, an individual, ) <br><br> Plaintiffs, ) <br><br> vs. ) <br><br> WELLS FARGO BANK, LTD., a ) <br> California Corporation; WELLS FARGO ) <br> INVESTMENTS, LLC; WELLS FARGO ) <br> PRIVATE INVESTMENT ADVISORS, ) <br> LLC; WELLS FARGO BROKERAGE ) <br> SERVICES, LLC; WELLS FARGO ) <br> INSTITUTIONAL SECURITIES, LLC; and ) <br> DOES 1 through 100, inclusive; ) <br><br> Defendants. ) | Case No. BC 417020 <br><br> **FIRST AMENDED COMPLAINT** <br><br> 1. VIOLATION OF SECTION 10(b) AND SEC RULE 10b-5 <br> 2. VIOLATION OF SECTION 20 OF THE EXCHANGE ACT <br> 3. SECURITIES FRAUD <br> 4. SECURITIES FRAUD BY A BROKER-DEALER <br> 5. UNSUITABLE INVESTMENTS <br> 6. FAILURE TO SUPERVISE <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, by his undersigned attorneys allege the following upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters based upon the investigation made by and through his attorneys, which investigation included, among other things, a review of the public documents and news releases concerning the Defendants, including their public filings with the United States Securities and Exchange Commission (the "SEC").

1
FIRST AMENDED COMPLAINT

## INTRODUCTION

1.     Auction Rate Securities ("ARS") are long term, variable rate bonds tied to short term interest rates.  Specifically, ARS are municipal bonds, corporate bonds, and preferred stocks with interest rates or dividend yields that are periodically re-set through auctions, typically every 7, 14, 28, or 35 days.  Interest is paid at the current period based on the interest rate determined in the prior auction period.

2.     Auction Rate Preferred Securities are typically issued by closed-end funds in order to provide the funds' leverage.  There is no maturity date and some investors are paying interest rates of just above 3%.

3.     Due to ARS's interest rate or dividend yield re-set feature, ARS have been marketed as short-term instruments.  ARS however, bear no resemblance to any cash management vehicles and, in fact, federal regulations prohibit money market funds from investing in ARS.

4.     Defendants deceptively marketed ARS as cash alternatives to money market funds for investors needing liquidity.  Defendants utterly failed to disclose material information about the ARS they were marketing.  Indeed, in monthly account statements periodically sent to investors, Defendants listed ARS under the heading of "cash."

5.     Defendants uniformly failed to disclose that ARS are not cash alternatives to money market funds but are instead complicated financial products based on bonds having maturities of 30 years and longer.  Defendants also failed to disclose that ARS were only "liquid" because they and other broker-dealers created an artificial market for ARS which would dry up as soon as these broker-dealers decided to remove themselves from the auction process.

6.     In order to make these investments more attractive and to generate a higher yield, the bond funds were leveraged and the leverage floats.  Thus, regular bonds were re-packaged as weekly adjustable bonds with leverage.  The marketing reflected the safety of municipal bonds and downplayed the risk of failed auctions.  The marketing materials did not adequately explain the lack of liquidity that could occur.

7.     For many of the issuances, there is an auction every week, and purportedly, every seven days the investor can get his or her money out based on a successful auction.  A failed auction reveals that there were more sellers than buyers.  In the instance of a failed auction,

investors are prohibited from getting their money out of the investment until the next successful auction, and borrowers are forced to pay a high penalty rate. Historically, if an auction appeared near failure, the investment banks managing it would step in to buy the securities themselves. However, now with the near collapse of the United States mortgage sector, the strength of financial services companies has eroded, including the big investment banks and the companies that insure bonds against default.

8.     Rather than disclosing the true nature of ARS and the substantial liquidity risks associated with them, Defendants continued to push as many ARS as possible onto its customers in an effort to unload the inventory off its already troubled balance sheet.

9.     Investors have no prospect of ever selling their securities through the auction market which has now been exposed as manipulated and artificial. The only chance for investors to sell their ARS and to achieve liquidity is to sell their securities at a substantial discount to par value.

10.     In April of 2005, the SEC launched an industry wide investigation into possible violations of fair dealing in the $200 billion ARS market by broker-dealers. On May 31, 2006, the SEC settled with 15 broker-dealer firms for improper practices in the ARS market. In the settlement, numerous firms were found improperly disclosing one or more of the following activities in their auction setting processes:

    a. Allowing customers to place open or market orders in auctions;

    b. Intervening in auctions by bidding for a firm's proprietary account or asking customers to make or change orders in order to prevent failed auctions, to set a market rate, or to prevent all-hold auctions;

    c. Submitting or changing orders, or allowing customers to submit or change orders, after auction deadlines;

    d. Not requiring certain customers to purchase partially filled orders even though the orders were irrevocable;

    e. Having an express or tacit understanding to provide certain customers with higher returns than the auction clearing rate; and

    f. Providing certain customers with information that gave them an advantage over other customers in determining what rate to bid.

11.    Plaintiff has been harmed as a result of Defendants' deceptive conduct and misrepresentations because the ARS he purchased from the Defendants are no longer liquid and are also now worth less due to their illiquidity.

## JURISDICTION AND VENUE

12.    The claims alleged herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 78t, Rule 10b-5, and 17 C.F.R. § 240.10b-5 promulgated here.

13.    This Court has jurisdiction over this matter because Defendant WELLS FARGO BANK, LTD. is a California corporation located at 707 Wilshire Boulevard, Los Angeles, California 90017. The other WELLS FARGO Defendants also have their principal places of business located in California. Additionally, Plaintiff is a resident of the State of California.

14.    Venue is proper in the County of Los Angeles because Defendant WELLS FARGO BANK, LTD is a California corporation located in the County of Los Angeles, specifically at 707 Wilshire Boulevard, Los Angeles, California 90017.

## PARTIES

**Plaintiff**

15.    Plaintiff JUAN DMITRUK is a resident of the State of California, and an individual investor who purchased, owned and/or sold WELLS FARGO Defendants' Auction Rate Securities. Plaintiff JUAN DMITRUK sustained damages in an amount yet to be determined.

**Defendants**

16.    Defendant WELLS FARGO BANK, LTD. is a California corporation located at 707 Wilshire Boulevard, Los Angeles, California 90017.

17.    Defendant WELLS FARGO INVESTMENTS, LLC is a limited liability corporation incorporated in Delaware, with its principal place of business located at 420 Montgomery Street, San Francisco, California 94104. It is a licensed securities broker-dealer and investment adviser. It is a wholly owned subsidiary of Wells Fargo Investment Group, Inc., whose ultimate parent is Wells Fargo & Company.

18.     Defendant WELLS FARGO PRIVATE INVESTMENT ADVISORS, LLC is a limited liability corporation incorporated in Delaware, with its principal place of business located at 1860 Embarcadero Road AO477-010, Palo Alto, California 94303. It is a wholly owned subsidiary of Wells Fargo Investment Group, Inc., whose ultimate parent is Wells Fargo & Company.

19.     Defendant WELLS FARGO BROKERAGE SERVICES, LLC is, and at all time mentioned herein was, a limited liability company organized and existing under the laws of the State of Delaware. It is a licensed securities broker-dealer with its principal place of business in Minneapolis, Minnesota. It is a wholly owned subsidiary of Wells Fargo Investment Group, Inc., whose ultimate parent is Wells Fargo & Company.

20.     Defendant WELLS FARGO INSTITUTIONAL SECURITIES, LLC is, and at all time mentioned herein was, a limited liability company organized and existing under the laws of the State of Delaware. It is a licensed securities broker-dealer with its principal place of business in Minneapolis, Minnesota. It is a wholly owned subsidiary of Wells Fargo Investment Group, Inc., whose ultimate parent is Wells Fargo & Company.

21.     Unless specifically noted, "WELLS FARGO" refers collectively to Defendants WELLS FARGO BANK, LTD., WELLS FARGO INVESTMENTS, LLC, WELLS FARGO PRIVATE INVESTMENT ADVISORS, LLC, WELLS FARGO BROKERAGE SERVICES, LLC, and WELLS FARGO INSTITUTIONAL SECURITIES, LLC.

## DEFENDANTS' WRONGFUL CONDUCT

### The ARS Market

22.     ARS are municipal bonds, corporate bonds, and preferred stocks with interest rates or dividend yields that are periodically re-set through auctions, typically every 7, 14, 28, or 35 days. ARS are usually issued with maturities of 30 years, but the maturities can range from 5 years to perpetuity.

23.     ARS were first developed in 1984 and the ARS market has grown to well over $300 billion. In the past, mostly institutional investors participated in the ARS markets but recently the broker-dealers reduced the minimum investment from $250,000.00 to $25,000.00, placing these

securities within reach of individual investors.

**Auction Mechanics**

24.      ARS are auctioned at par so the return on the investment to the investor and the cost of financing to the issuer between auction dates is determined by the interest rate or dividend yield set through the auctions.

25.      The interest rate or dividend yield is supposed to be set through an auction, commonly referred to as a "Dutch" auction, in which bids with successively higher rates are accepted until all of the securities in the auction are sold.

26.      Typically, investors can only submit the following types of orders: 1) a "hold" order, which is the default order for current investors (i.e., the order that is entered for a current holder if the holder takes no action), where a current investor will keep the securities at the rate at which the auction clears; 2) a "hold-at-rate" bid, where a current investor will only keep the securities if the clearing rate is at or above the specified rate; 3) a "sell" order, where a current investor will sell the securities regardless of the clearing rate; or 4) a "buy" bid, where a prospective investor or a current investor who wants more securities, will buy securities if the clearing rate is at or above the specified rate.

27.      Disclosure documents often state that an investor's order is an irrevocable offer. The final rate at which all of the securities are sold is the "clearing rate" that applies to all of the securities in the auction until the next auction. Bids with the lowest rate and then successively higher rates are accepted until all of the sell orders are filled. The clearing rate is the lowest rate bid sufficient to cover all of the securities for sale in the auction.

28.      If there are not enough bids to cover the securities for sale, then the auction fails; the issuer pays an above-market rate set by a pre-determined formula described in the disclosure documents and all of the current holders continue to hold the securities. If all of the current holders of the security elect to hold their positions without bidding a particular rate, then the clearing rate is the all-hold rate, a below-market rate set by a formula described in the disclosure documents.

**Broker-Dealers' Role in Auctions**

29.      The issuer of each security selects one or more broker-dealers to underwrite the

FIRST AMENDED COMPLAINT

offering and/or manage the auction process. Investors can only submit orders through the selected broker-dealers. At all relevant times, Wells Fargo was a broker-dealer in the ARS market.

30.     The issuer pays an annualized fee to each broker-dealer, such as Wells Fargo, engaged to manage an auction. The fee is typically 25 basis points (i.e., .25% of 1%) for the par value of the securities that it manages.

31.     The issuer also selects an auction agent to collect the orders and determine the clearing rate for the auction. Investors must submit orders for an auction to the broker-dealer by a specified time. Many broker-dealers have an internal deadline by which investors must submit their orders to them.

32.     This internal deadline allows the broker-dealer sufficient time to process and submit the orders to the auction agent. Other broker-dealers allow investors to submit orders up until the submission deadline, i.e., the deadline for broker-dealers to submit orders to the auction agent. The broker-dealers must submit the orders to the auction agent before the submission deadline and usually must identify each separate order.

**Auction Agents' Role in Auctions**

33.     After receiving the orders from the broker-dealers, the auction agent calculates the clearing rate that will apply until the next auction. In practice, however, if there is only one broker-dealer, as in the case of many of the auctions managed by Wells Fargo, the broker-dealer can discern the clearing rate before submitting the orders to the auction agent.

34.     The auction agent allocates the securities to the broker-dealers based on the orders submitted. The auction procedures generally state that orders are filled in the following order: hold orders, hold-at-rate and buy bids with a rate below the clearing rate, hold-at-rate orders with a rate at the clearing rate, and buy bids with a rate at the clearing rate.

35.     When there are more bids for securities at the clearing rate than securities remaining for sale, the securities are allocated on a pro rata basis first to the hold-at-rate bidders and then to the buy bidders. Generally, the auction procedures require broker-dealers to follow the same hierarchy in allocating the securities to their customers.

36.     From 1984 to 2006, the ARS market had grown to more than $200 billion and the

1  fees collected by the 20 or so broker-dealers running this market exceeded $600 million per year.

2  37.  In order to keep this investment operating, it was of utmost importance for broker-

3  dealers to portray the ARS market as extremely liquid because the primary target market for these

4  securities were investors with short-term investment goals or money-market needs.

5  38.  Any hint that the auction market for ARS was anything but robustly liquid would

6  deter investors.  Thus, a failed auction, or even a rumor of one, was a marketing stigma that Wells

7  Fargo could not tolerate.

8  39.  However, the ARS auctions were not nearly liquid enough to support the billions of

9  dollars in ARS that Wells Fargo and other broker-dealers were pumping out to investors on a

   daily basis.

10  40.  In an effort to conceal the inherent illiquidity of the auction market, certain broker-

11  dealers agreed to engage in various practices they termed "stabilization." In reality, however, the

12  conduct was nothing short of market-manipulation designed to mask an auction market that lacked

13  sufficient demand.

14  41.  In an Administrative Proceeding dated May 31, 2006, the SEC found that certain

15  broker-dealers engaged in various illegal practices in order to make it appear that the auctions were

16  successful and legitimate when in fact they were not.

17  42.  Broker-dealers were found to routinely take over customers' bid orders by filling

18  in the blanks on open or market orders after viewing other bidders' orders.  This practice favored

19  certain customers over others and allowed the broker-dealers to easily manipulate the auction

20  price.

21  43.  Broker-dealers were also found to bid for their own accounts without disclosing

22  this to clients or asking their customers to change orders in an effort to: prevent failed auctions,

23  thereby supporting the "no failed auction" marketing claim; and set artificial "market" rates, at

24  levels chosen by broker-dealers themselves.

25  44.  The SEC found some broker-dealers rearranging bids through "netting" of in-house

26  buy and sell orders ahead of actual auctions in order to change the priority of bids.  Before

27  submitting bids to the auction agent, broker-dealers changed or "prioritized" their customers'

28  bids to increase the likelihood that the bids would be filled.  As a result of this prioritization and

a similar practice known as "cross-trading," certain bids were moved up in the disclosed hierarchy by which different types of bids would be filled. In certain instances, these practices resulted in certain investors' bids displacing other investors' bids.

45.     The SEC also found rampant submission or revision of bids after deadlines. As described above, most auctions had an internal deadline that broker-dealers set for investors to submit bids to the broker-dealers and a formal submission deadline set by the offering documents for broker-dealers to submit bids to the auction agent. Broker-dealers allowed certain investors to submit or revise bids after these deadlines. In addition, the broker-dealers themselves submitted or revised bids after these deadlines. These practices advantaged investors or the broker-dealers, who bid after a deadline, by displacing other investors' bids, thereby affected the clearing rate while failing to conform to disclosed procedures.

46.     The SEC also found that broker-dealers collaborated with certain customers by asking them to bid at auctions while subsequently compensating them with higher than clearing rates in the secondary market. For example, pursuant to an express or tacit understanding reached prior to or during an auction: (1) certain broker-dealers provided a higher return by having the investor submit its bid at a lower rate than the investor actually wanted to receive, allowing the auction to clear at the lower rate, buying the securities from the investor after the auction, and then selling the securities back to the investor at below par value; (2) certain broker-dealers simply displaced an investor's bid and then compensated the investor by selling securities to the investor at below par value in the secondary market; and (3) certain broker-dealers provided a higher return by delaying the settlement date for certain investors.

47.     Finally, the SEC found that certain broker-dealers provided different "price talks" to different customers, placing certain customers at an advantage over others.

48.     The SEC's findings demonstrated that certain ARS auctions were often auctions in name only and allowed broker-dealers and/or their preferred customers to earn the best interest rates and manipulate the ARS market.

49.     The 15 broker-dealers investigated by the SEC were fined $13 million, censured by the SEC, and ordered to "cease and desist" from these practices in the future.

FIRST AMENDED COMPLAINT

50.    At all relevant times, the broker-dealers continued to engage in various practices to artificially holster the auction markets without fully disclosing their conduct to the investing public.

**The Auction Market Starts to Unravel**

51.    On or around May 31, 2006, the United States Securities and Exchange Commission settled its investigation of approximately 15 broker-dealer firms for securities law violations in the auction rate securities market dating back to 2003.  this settlement mainly dealt with issues in the auction process itself, finding these firms favored some clients over others, and popped up the auctions on occasion to prevent failures or to set more favorable rates.  The SEC found the firms' conduct violated section 17(a)(2) of the Securities Act of 1933, which prohibits material misstatements and omissions in any offer or sale of securities.

52.    In 2007, a credit crisis of unprecedented proportion swept across the United Stated that continues to shake the financial markets to this day.

53.    By mid 2007, banks stopped financing private equity deals, the prices of U.S. residential real estate went into a steep decline, and the mortgage market for sub-prime borrowers essentially shut down.  The collapse of the credit markets forced financial institutions to report more than $50 billion in losses and write-downs and began infecting the ARS market.

54.    Wells Fargo struggled to maintain the illusion of a healthy and liquid auction market despite the fact that demand of ARS by its corporate and institutional clients essentially dried up.  This shift was driven, in large part by a March 2007 decision by the Financial Accounting Standards Board ("FASB") requiring ARS to be listed on balance sheets as short-term investments rather than under the heading of cash equivalents.

55.    Corporations responded to this by moving out of ARS so that their balance sheet cash positions would not be reduced as a result of the FASB decision.  This meant that many corporations no longer wanted to buy ARS.

56.    Rather than disclose the weakening demand for ARS in the auctions, Wells Fargo continued to intensely market ARS to its customers as a liquid cash alternative, and

indeed, represented such securities as cash equivalents in monthly account statements sent to customers.

57.     By the middle of 2007, legitimate demand for ARS virtually disappeared. However, broker-dealers continued to manipulate the ARS auctions and to disseminate information that did not reflect the actual supply-and-demand dynamics of the ARS market in order to maintain an aura of legitimacy and liquidity for these ARS.

58.     Wells Fargo engaged in this conduct, among other reasons, in order to unload the millions of dollars in ARS it had in inventory. The only way Wells Fargo could accomplish this was by deceiving investors into believing that the ARS market was liquid, when in reality, it was not.

59.     By August 16, 2007, several monthly auctions failed amid the turmoil in the credit markets. Many investors choose not to bid in auctions during the month of August 2007, creating losses in about 60 auctions worth approximately $6 billion of ARS. Some credit rating agencies were even advising that they would not be surprised to see further failed auctions in the days or weeks ahead.

60.     Thereafter, auctions began failing with some regularity. Those auctions that did succeed, would have failed but for the broker-dealers' intervention. The broker-dealers continued to intervene in order to prop-up the auction market by bidding with knowledge of other bids, submitting bids after the internal bidding deadline imposed on investors, and by directly or indirectly influencing or setting the clearing rates with considerable frequency.

61.     Defendants did not provide adequate training about auction-rate securities to its sales agents, nor did they typically require product training prior to accepting orders for auction rate securities.

62.     Defendants did not prepare or provide informational materials about auction-rate securities for its investors, and to the extent it did provide such material, typically they were inadequate. Defendants typically did not obtain prospectuses, disclosure documents or other informational materials on auction-rate securities. Defendants' sales agents did not supply investors with prospectuses, disclosure documents or other informational materials, nor did they tell investors such information was available.

63.   Although Wells Fargo was aware that there was no legitimate auction demand for ARS, it still marketed and sold ARS as a liquid cash alternative.

64.   Despite knowledge of the harm inflicted on their investors from the ARS market, Wells Fargo continues to support the auctions.

65.   Plaintiff is still unable to access his invested funds.

66.   After the auction failures in February 2008, the majority of Defendants' investors' securities became frozen. Defendants exploited the situation by selling loan programs to its auction-rate securities investors. One program, offered through Defendants involved a margin loan for 50% of the par value of the auction-rate securities. Wells Fargo Bank later offered a non-recourse line of credit to Defendants' investors for up to 90% of the par value of the auction-rate security, which served as collateral. Some investors, needing the money they had invested in the auction-rate securities, took these loans. Indeed, Plaintiff was offered a 90 % loan.

## ADDITIONAL SCIENTER ALLEGATIONS

67.   The Defendants have acted with scienter in that they knew that the statements issued or disseminated about ARS were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated in or acquiesced to the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding the ARS market, their control over and/or their associations with the ARS market which made them privy to confidential proprietary information concerning the ARS market, participated in the fraudulent scheme alleged herein.

68.   Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The ongoing fraudulent scheme described could not have been perpetrated over a substantial period of time, as described herein, without the knowledge and complicity of the personnel at the highest levels of Wells Fargo. Defendants were motivated to materially misrepresent the true nature of the ARS auction market in order to: (a) attract new investors who would only invest in ARS if they believed

1 a highly liquid traction market existed; (b) unload ARS in their inventory to unsuspecting investors
2 who believed they were purchasing a liquid investment; and (c) continue collecting substantial fees
3 of approximately 25 basis points per year for managing the ARS auctions on behalf of issuers.

**THE SAFE HARBOR PROVISION IS INAPPLICABLE**

69.    The statutory safe harbor under the Private Securities Litigation Reform Act of
1995, which applies to forward-looking statements under certain circumstances, does not apply to
any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false
and misleading herein all relate to then existing facts and conditions.  In addition, to the extent
some of the statements alleged to be false may be characterized as forward-looking, they were not
adequately identified as "forward-looking statements" when made and there were no meaningful
cautionary statements identifying important factors that could cause actual results to differ
materially from those in the purportedly forward-looking statements.

70.    Alternatively, to the extent that the statutory safe harbor is intended to apply to any
forward-looking statements pleaded herein, Defendants are liable for those false forward-looking
statements because at the time each of those forward-looking statements was made, the particular
speaker had actual knowledge that the particular forward-looking statement was materially false or
misleading, and/or the forward-looking statement was authorized and/or approved by an executive
officer of Defendants who knew that those statements were false, misleading, or omitted necessary
information when they were made.

**CAUSATION / ECONOMIC LOSS**

71.    During all relevant times as detailed herein, the Defendants engaged in a scheme to
deceive the market through a course of conduct that artificially inflated the value and liquidity of
ARS and operated as a fraud or deceit on acquirers of ARS purchased from Wells Fargo.

72.    As detailed above, when the true nature of the ARS auction market was revealed,
the ARS held by Plaintiff became illiquid and as a result declined in value.  This decline in the
liquidity and value of ARS was a direct result of the nature and extent of Defendants' fraud finally
being revealed to investors and the market.  The timing of the illiquidity in ARS and the magnitude
of the price decline negates any inference that the loss suffered by Plaintiff was caused by changed

market conditions, macroeconomic or industry factors or other facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages suffered by the Plaintiff was a direct result of Defendants' fraudulent scheme to artificially inflate the ARS price by manipulating the auction markets and the subsequent significant decline in the liquidity and value of ARS sold by Defendants' after their prior misrepresentations and other fraudulent conduct was revealed.

73. At all times relevant, the Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff. These statements were materially false and misleading because they failed to disclose a true and accurate picture of the ARS auction market as alleged herein. Defendants publicly issued materially false and misleading statements and made omissions of material facts, causing the market price of ARS to be artificially inflated. Plaintiff purchased ARS at these artificially inflated prices and were damaged thereby.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF SECTION 10(b) AND SEC RULE 10b-5

#### (Against all Defendants and DOES 1 to 100, Inclusive)

74. Plaintiff hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as though fully set forth hereinafter.

75. This Count is alleged against all of the Defendants and is based upon Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated here.

76. Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as fraud and deceit upon Plaintiff, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff. The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce Plaintiff to purchase ARS at artificially inflated prices and under false pretenses that the market for ARS was liquid and robust.

77. As a result of the failure to disclose material facts, the information Defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price and liquidity of ARS was artificially inflated.

78.    In ignorance of the duty to disclose the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by the Defendants, Plaintiff relied, to his detriment on the integrity of the market price and liquidity of the auction market when purchasing ARS from Defendants. Had Plaintiff known the truth, he would not have purchased said securities or would not have purchased them at the inflated prices that were paid.

79.    Plaintiff has suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

80.    By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated here in that they: (a) employed devices, schemes, and artifices to defraud; (b) failed to disclose material information; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff in connection with their purchases of ARS.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF SECTION 20 OF THE EXCHANGE ACT

#### (Against all Defendants and DOES 1 to 100, Inclusive)

82.    Plaintiff hereby incorporates by reference each and every allegation set forth in the foregoing paragraphs as though fully set forth hereinafter.

83.    Defendant WELLS FARGO BANK, LTD acted as a control person of Defendants WELLS FARGO PRIVATE INVESTMENT ADVISORS, LLC, WELLS FARGO INVESTMENTS, LLC, WELLS FARGO BROKERAGE SERVICES, LLC and WELLS FARGO INSTITUTIONAL SECURITIES, LLC within the meaning of Section 20(a) of the Exchange Act as alleged herein.

84.    By virtue of its ownership of WELLS FARGO PRIVATE INVESTMENT ADVISORS, LLC, WELLS FARGO INVESTMENTS, LLC, WELLS FARGO BROKERAGE SERVICES, LLC and WELLS FARGO INSTITUTIONAL SECURITIES, LLC; WELLS FARGO BANK, LTD had the power to influence and control and did influence and control, directly or indirectly, the decision-making by its subsidiaries, including the content and

dissemination of the various statements which Plaintiff contends are false and misleading. WELLS FARGO BANK, LTD was provided with or had unlimited access to copies of the reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.    As set forth above, the Wells Fargo Defendants have violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of its position as a controlling entity, WELLS FARGO BANK, LTD is liable pursuant to Section 20(a) of the Exchange Act.

### THIRD CLAIM FOR RELIEF

### SECURITIES FRAUD – CORPORATIONS CODE SECTION 25401

### (Against all Defendants and DOES 1 to 100, Inclusive)

86.    Plaintiff hereby incorporates by reference each and every allegation set forth in the foregoing paragraphs as though fully set forth hereinafter.

87.    Pursuant to Corporations Code section 25401, it is unlawful for any person to offer or sell a security in this state by means of any written or oral communication which includes an untrue statement of a material fact.

88.    The auction rate securities offered for sale and sold by Defendants, as alleged hereinabove, are "securities" as defined in Corporations Code section 25017.

89.    Defendants' misrepresentations were made in connection with the offer and sale of securities within the meaning of Corporations Code section 25017.

90.    Defendants' misrepresentation took place within the State of California within the meaning of Corporations Code section 25008.

91.    In offering for sale and/or selling the auction-rate securities defendants misrepresented that they were safe, liquid, and cash-like investments, similar to certificates of deposit or money market funds.  Defendants violated Corporations Code section 25401 because these statements were untrue and misleading by virtue of the omission of material facts, including without limitation, those set forth above.

### FOURTH CLAIM FOR RELIEF

## SECURITIES FRAUD BY A BROKER-DEALER –

## CORPORATIONS CODE SECTION 25216(a)

### (Against all Defendants and DOES 1 to 100, Inclusive)

92.     Plaintiff hereby incorporates by reference each and every allegation set forth in the foregoing paragraphs as though fully set forth hereinafter.

93.     Pursuant to Corporations Code section 25216(a), no broker-dealer or agent shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state by means of any manipulative, deceptive or other fraudulent scheme, device or contrivance.

94.     In knowingly offering for sale and/or selling auction-rate securities by means of untrue and misleading statements, namely that such investments were safe, liquid, and cash-like investments, similar to certificates of deposit or money market funds, Defendants violated Corporations Code section 25216(a).

## FIFTH CLAIM FOR RELIEF

## UNSUITABLE INVESTMENTS –

## CORPORATIONS CODE SECTION 25216(c) and CAL. CODE REGS., TIT. 10, § 260.218.2

### (Against all Defendants and DOES 1 to 100, Inclusive)

95.     Plaintiff hereby incorporates by reference each and every allegation set forth in the foregoing paragraphs as though fully set forth hereinafter.

96.     Corporations Code section 25216(c) provides, in relevant part, that no broker-dealer or agent shall sell any security in California in contravention of any rule prescribed by the California Corporations Commissioner ("Commissioner") for the protection of investors.

97.     Cal. Code Regs., tit. 10, section 260.218.2, a rule prescribed the Commissioner, required Defendants and their agents to have reasonable grounds to believe that their auction-rate securities recommendations were suitable based on facts disclosed by the customers after reasonable inquiry as to their objectives, financial situation, and needs.

98.     Despite these requirements, defendants' sales agents recommended and sold auction-rate securities to many investors for whom auction-rate securities were unsuitable. Defendants' sales agents falsely promoted auction-rate securities as safe, liquid, and cash-like investments, similar to certificates of deposit or money market funds. Defendants' sales agents recommended

auction-rate securities to investors who needed and requested, safe, liquid, cash-like investments in order to have ready access to their funds to pay living or other immediate expenses. Auction-rate securities for these investors were unsuitable because of the risk of auction failures and the consequences of such a failed auction included that their funds would be frozen for an indefinite period of time. Defendants' sales agents recommended auction-rate securities as cash-like investments, even though auction-rate securities had long-term maturity dates, or in the case of ARPS, no maturity dates, and without explaining the risks of auction failures. Defendants' sales agents recommended auction-rate securities to investors without concern for the concentration of auction-rate securities that investors would hold in their accounts. The auction-rate market failure created hardships for defendants' investors in California and nationwide. Defendants and their sales agents created these hardships by making unsuitable investment recommendations, in violation of Corporations Code section 25216(c) and Cal. Code Regs., tit. 10, section 260.218.2.

## SIXTH CAUSE OF ACTION

### FAILURE TO SUPERVISE - CORPORATIONS CODE SECTION 25216(c) and CAL. CODE REGS., TIT. 10, § 260.218.2

### (Against all Defendants and DOES 1 to 100, Inclusive)

99.     Plaintiff hereby incorporates by reference each and every allegation set forth in the foregoing paragraphs as though fully set forth hereinafter.

100.    Plaintiff refers to and realleges paragraphs 1 through 48, inclusive above, and incorporates aid paragraphs by reference as though fully set forth herein.

101.    Corporations Code section 2516(c) provides, in relevant part, that no borker-dealer or agent shall sell any security in California in contravention of any rule prescribed by the Commissioner for the protection of investors.

102.    Cal. Code Regs., tit. 10, section 260.218.4, a rule of the Commissioner, required that defendants exercise diligent supervision over the securities activities of all their agents.

103.    Defendants failed to provide adequate supervision to its sales agents in connection with the offer and sale of auction-rate securities. Defendants' sales agents typically were not aware of significant aspects of the auction-rate securities market. Defendants' sales agents typically were

not aware of significant aspects of the auction-rate securities market. Defendants typically did not prepare or provide resource materials on auction-rate securities for their sales agents to educate themselves on the auction-rate securities market. Defendants typically did not prepare any disclosures or written materials for their sales agents to provide to auction-rate securities investors. Defendants typically did not ensure that the information sales agents did have available on auction-rate securities was consistently delivered to investors. Defendants' typically did not provide all the information they had about auction-rate securities to their sales agents. Defendants typically did not provide or require proper training for their sales agents. Despite a lack of training or information, defendants allowed their sales agents to offer and sell auction-rate securities to its investors as safe, liquid, and cash-like investments, similar to certificates of deposit or money market funds.

104.   Defendants typically did not establish any written supervisory procedures for the review of auction-rate securities transactions, nor did defendants train supervisory personnel on how to review auction-rate securities for suitability.

105.   By failing to provide adequate training and information on auction-rate securities, defendants failed to adequately supervise their sales agents in connection with the sale of auction-rate securities, in violation of Corporations Code section 25216(c) and Cal. Code Regs., tit. 10, section 260.218.4. The failure to adequately train sales agents directly resulted in sales agents making unsuitable investment recommendations and failing to disclose material information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.   General and compensatory damages according to proof;

2.   Special damages according to proof;

3.   Reasonable fees and expenses incurred in this action, including attorneys' fees;

4.   Costs of the proceedings;

5.   Prejudgment interest at the maximum legal rate; and

6.   Such other and further relief as the Court deems proper.

## JURY DEMAND

PLAINTIFF demands a trial by jury on all claims so triable.

DATED:  September 8, 2009

GIRARDI | KEESE

By:_____
        Thomas V.  Girardi
        Neyleen S.  Beljajev

20
FIRST AMENDED COMPLAINT

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WELLS FARGO BANK, LTD., a California Corporation;
WELLS FARGO INVESTMENTS, LLC; WELLS FARGO PRIVATE
INVESTMENT ADVISORS, LLC; WELLS FARGO BROKERAGE
SERVICES, LLC; WELLS FARGO INSTITUTIONAL SECURITIES,
LLC; and DOES 1 through 100, inclusive;

100, inclusive
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JUAN DMITRUK, an individual,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY
OF ORIGINAL FILED**
Los Angeles Superior Court

JUL 01 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| LOS ANGELES SUPERIOR COURT 111 N Hill Street<br><br>Los Angeles, CA. 90012 CENTRAL | BC417020 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
NEYLEEN S. BELJAJEV - BAR NO. 251589      (213) 977-0211
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, CA. 90017

DATE: June, 29, 2009                    Clerk, by _____, Deputy
*(Fecha)* JUL 01 2009                   *(Secretario)*              *(Adjunto)*

(For proof of service of this summons use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI, SBN 36603<br>NEYLEEN S. BELJAJEV, SBN 251589<br>GIRARDI \| KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, CA. 90017<br>TELEPHONE NO.: (213) 977-0211    FAX NO. *(Optional)*:   (213) 481-1554<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: PLAINTIFF, JUAN DMITRUK | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 111 N Hill Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Los Angeles, CA. 90012 |
| BRANCH NAME: CENTRAL |

| PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual |
|---|
| DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., et al., |

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BC 417 020 |
|---|---|

TO *(insert name of party being served)*: WELLS FARGO PRIVATE INVESTMENT ADVISORS, LLC.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September /< , 2009

IRASEMA LONGORIA
(TYPE OR PRINT NAME)                              (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. [ x ] A copy of the summons and of the complaint.
2. [ x ] Other: *(specify)*: Notice of Case Assignment; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location

*(To be completed by recipient)*:

Date this form is signed: September 25 , 2009
Heather B. Hoesterey, Counsel for Wells Fargo
Private Investments Advisors, LLC

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,     (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)              ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI, SBN 36603<br>NEYLEEN S. BELJAJEV, SBN 251589<br>GIRARDI \| KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, CA.  90017<br>TELEPHONE NO.: (213)977-0211   FAX NO. *(Optional):*  (213)481-1554<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* PLAINTIFF, JUAN DMITRUK | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

STREET ADDRESS: 111.N Hill Street

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles, CA.  90012

BRANCH NAME: CENTRAL

PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual

DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., et al.,

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BC 417 020 |
|---|---|

TO *(insert name of party being served):* WELLS FARGO BROKERAGE SERVICES,LLC

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September //, 2009

IRASEMA LONGORIA

(TYPE OR PRINT NAME)                     (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [x] A copy of the summons and of the complaint.
2. [x] Other: *(specify):* Notice.of Case Assignment; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location

*(To be completed by recipient):*
Date this form is signed: September 25 , 2009
Heather B. Hoesterey,. Counsel for Wells Fargo
Brokerage Services, LLC

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Legal<br>Solutions<br>Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>THOMAS V. GIRARDI, SBN 36603<br>NEYLEEN S.  BELJAJEV, SBN 251589<br>GIRARDI \| KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, CA.  90017<br>　TELEPHONE NO.: (213)977-0211　　FAX NO. *(Optional):*　(213)481-1554<br>E-MAIL ADDRESS *(Optional):*<br>　ATTORNEY FOR *(Name):* PLAINTIFF, JUAN DMITRUK | **FOR COURT USE ONLY** |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES<br>　STREET ADDRESS: 111 N Hill Street<br>　MAILING ADDRESS:<br>　CITY AND ZIP CODE: Los Angeles, CA.  90012<br>　BRANCH NAME: CENTRAL |
| PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual<br><br><br>DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., et al., |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>BC 417 020 |

TO *(insert name of party being served):* WELLS FARGO INSTITUTIONAL SECURITIES, LLC

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September // , 2009

IRASEMA LONGORIA
　　　　(TYPE OR PRINT NAME)　　　　　　　　　　　(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [x] A copy of the summons and of the complaint.
2. [x] Other: *(specify):* Notice of Case Assignment; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location

*(To be completed by recipient):*
Date this form is signed: September  25 , 2009
Heather B. Hoesterey, Counsel for Wells Fargo
Institutional Securities, LLC
　　(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,　　　　　　(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
　　ON WHOSE BEHALF THIS FORM IS SIGNED)　　　　　　　　　　ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10 |

Legal
Solutions
ⓒ Plus

POS-015

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
THOMAS V. GIRARDI, SBN 36603
NEYLEEN S.  BELJAJEV, SBN 251589
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, CA.  90017
TELEPHONE NO.: (213)977-0211   FAX NO. (Optional): (213)481-1554
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): PLAINTIFF, JUAN DMITRUK

| FOR COURT USE ONLY |
| --- |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA.  90012
BRANCH NAME: CENTRAL

PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual

DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., et al.,

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: BC 417 020 |
| --- | --- |

TO *(insert name of party being served):* WELLS FARGO BANK, LTD. a California Corporation

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September 11 , 2009

IRASEMA LONGORIA
(TYPE OR PRINT NAME)

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☒ A copy of the summons and the complaint.
2. ☒ Other: *(specify):* Notice of Case Assignment; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location

*(To be completed by recipient):*
Date this form is signed: September 25 , 2009

Heather B. Hoesterey, Counsel for Wells Fargo Bank, LTD, a California Corporation
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Legal Solutions Plus

Code of Civil Procedure, §§ 415.30, 417.10

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI, SBN 36603<br>NEYLEEN S.  BELJAJEV, SBN 251589<br>GIRARDI \| KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, CA.  90017<br>TELEPHONE NO.: (213) 977-0211     FAX NO. (Optional):  (213) 481-1554<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): PLAINTIFF, JUAN DMITRUK | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA.  90012
BRANCH NAME: CENTRAL

PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual

DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., et al.,

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BC 417 020 |
|---|---|

TO (insert name of party being served): WELLS FARGO INVESTMENTS, LLC.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September // , 2009

IRASEMA LONGORIA
          (TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1.  [x]  A copy of the summons and of the complaint.
2.  [x]  Other: (specify): Notice of Case Assignment; Civil Case Cover Sheet; Civil Case
        Cover Sheet Addendum and Statement of Location

(To be completed by recipient):
Date this form is signed: September 25 , 2009
Heather B. Hoesterey, Counsel for Wells Fargo
Investments, LLC
          (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
          ON WHOSE BEHALF THIS FORM IS SIGNED)                ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Legal<br>Solutions<br>⊕ Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |

**Fax Call Report**

HP LaserJet **M4345 MFP Series**
Page 1

**Fax Header Information**

reed smith
14153918269
Sep-25-2009 04:06 PM

| Fax Job | Date/Time | Type | Identification | Duration | Pgs | Result |
|---------|-----------|------|----------------|----------|-----|--------|
| 176 | Sep-25-2009 04:05 PM | Send | 12134811554 | 1:28 | 6 | Success |

# EXHIBIT B

THOMAS V. GIRARDI - BAR NO. 36603
NEYLEEN S. BELJAJEV - BAR NO. 251589
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211

RECEIVED

OCT 0 6 2009

REED SMITH LLP

Attorneys for Plaintiff JUAN DMITRUK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| JUAN DMITRUK, an individual,<br><br>      Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, LTD., a California Corporation; WELLS FARGO INVESTMENTS, LLC; WELLS FARGO PRIVATE INVESTMENT ADVISORS, LLC; WELLS FARGO BROKERAGE SERVICES, LLC; WELLS FARGO INSTITUTIONAL SECURITIES, LLC; and DOES 1 through 100, inclusive;<br><br>      Defendants. | Case No. BC 417020<br><br>NOTICE OF CASE MANAGEMENT CONFERENCE<br><br>DATE:  October 29, 2009<br>TIME:  8:30 a.m.<br>DEPT.: "30" |

TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the court has set the above-referenced matter for a Case

Management Conference on October 29, 2009, at 8:30 a.m., in Department "30" of the Los Angeles

///

1

NOTICE OF CASE MANAGEMENT CONFERENCE

1  Superior Court, located at 111 N. Hill Street, Los Angeles, CA. 90012.

2  DATED:  September 28, 2009                    GIRARDI & KEESE

3

4                                                              BY:_____

5                                                                    THOMAS V. GIRARDI
                                                                     NEYLEEN S. BELJAJEV
6                                                                    Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

NOTICE OF CASE MANAGEMENT CONFERENCE

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, California 90017.

    On September 29, 2009, I served the foregoing document described as: NOTICE OF CASE MANAGEMENT CONFERENCE, on interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

<u>PLEASE SEE ATTACHED SERVICE LIST</u>

    [X]    (BY MAIL)

    [ ]    I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    [X]    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal Service on that day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    [ ]    (BY FAX)

    Executed on September 29, 2009 at Los Angeles, California.

    [X]    (STATE)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    [ ]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

IRASEMA LONGORIA

---

3

NOTICE OF CASE MANAGEMENT CONFERENCE

1   PROOF OF SERVICE LIST

2

3   Heather B. Hoesterey, Esq.
    REED SMITH LLP
4   Two Embarcadero Center, Suite 2000
5   San Francisco, CA  94111-3922
    Telephone: (415)543-8700
6   Facsimile: (415) 391-8269

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

NOTICE OF CASE MANAGEMENT CONFERENCE

# EXHIBIT C

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| NEYLEEN S. BELJAJEV - BAR NO. 251589<br>GIRARDI \| KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, CA. 90017<br>TELEPHONE NO.: (213) 977-0211   FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): PLAINTIFF, JUAN DMITRUK | **RECEIVED**<br><br>OCT 1 9 2009<br><br>REED SMITH LLP |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA. 90012
BRANCH NAME: CENTRAL

PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual

DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., a California Corporation, et al.,

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one):   [X] UNLIMITED CASE<br>(Amount demanded<br>exceeds $25,000)      [ ] LIMITED CASE<br>(Amount demanded is $25,000<br>or less) | BC 417020 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: October 29, 2009      Time: 8:30 a.m.   Dept.: 30      Div.:      Room:

Address of court (if different from the address above):

[ ] Notice of Intent to Appear by Telephone, by (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. Party or parties (answer one):
   a. [X] This statement is submitted by party (name): JUAN DMITRUK
   b. [ ] This statement is submitted jointly by parties (names):

2. Complaint and cross-complaint (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): July 1, 2009
   b. [ ] The cross-complaint, if any, was filed on (date):

3. Service (to be answered by plaintiffs and cross-complainants only)
   a. [X] All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served (specify names and explain why not):
      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):
      (3) [ ] have had a default entered against them (specify names):
   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and the date by which they may be served):

4. Description of case
   a. Type of case in [X] complaint [ ] cross-complaint. (Describe, including causes of action):
      This matter involves securities fraud in that the defendants misrepresented investments and failed to disclose the true nature of the investments. Causes of action include violation of SEC rule 10b-5, violation of section 20 of the Exchange Act, securities fraud, securities fraud by a broker-dealer, unsuitable investments, and failure to supervise.

CM-110

| PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., a California Corporation, et al., | BC 417020 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Defendants' made materially false and misleading statements or omissions that directly or proximately caused the damages suffered by the Plaintiff. These statements were materially false and misleading because they failed to disclose a true and accurate picture of the ARS auction market as alleged herein.  Defendants publicly issued materially false and misleading statements and made omissions of material facts, causing the market price of ARS to be artificially inflated.  Plaintiff purchased ARS at these artificially inflated prices and was damaged thereby in an amount according to proof at trial.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request   ☒ a jury trial   ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
Trial: June 14, 2010 - July 6, 2010

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☒ days *(specify number):* 5
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial   ☒ by the attorney or party listed in the caption   ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☒ has   ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., a California Corporation, et al., | BC 417020 |

10. d.   The party or parties are willing to participate in (check all that apply):
    (1) [X] Mediation
    (2) [ ] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) [ ] Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) [ ] Binding judicial arbitration
    (5) [ ] Binding private arbitration
    (6) [ ] Neutral case evaluation
    (7) [ ] Other (specify):

    e. [ ] This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
    f. [ ] Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    g. [ ] This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court (specify exemption):

**11. Settlement conference**
    [X] The party or parties are willing to participate in an early settlement conference (specify when): Anytime the court is available.

**12. Insurance**
    a. [ ] Insurance carrier, if any, for party filing this statement (name):
    b. Reservation of rights: [ ] Yes [ ] No
    c. [ ] Coverage issues will significantly affect resolution of this case (explain):

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    [ ] Bankruptcy [ ] Other (specify):
    Status:

**14. Related cases, consolidation, and coordination**
    a. [ ] There are companion, underlying, or related cases.
        (1) Name of case:
        (2) Name of court:
        (3) Case number:
        (4) Status:
        [ ] Additional cases are described in Attachment 14a.
    b. [ ] A motion to [ ] consolidate [ ] coordinate will be filed by (name party):

**15. Bifurcation**
    [ ] The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action (specify moving party, type of motion, and reasons):

**16. Other motions**
    [X] The party or parties expect to file the following motions before trial (specify moving party, type of motion, and issues): Motions in limine at the time of trial.

CM-110

| PLAINTIFF/PETITIONER: JUAN DMITRUK, an individual | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: WELLS FARGO BANK, LTD., a California Corporation, et al., | BC 417020 |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Plaintiff | Written Discovery | Feb. 2010 |
| Plaintiff | Depositions | Apr. 2010 |
| Plaintiff | Expert Discovery | Per Code |

c. ☐ The following discovery issues are anticipated *(specify):*

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**19. Other Issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**20. Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**21. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: October 9, 2009

Neyleen S. Beljajev
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, California 90017.

On October 9, 2009, I served the foregoing document described as: CASE MANAGEMENT STATEMENT, on interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

PLEASE SEE ATTACHED SERVICE LIST

[X]   (BY MAIL)

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[X]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal Service on that day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   (BY FAX)

Executed on October 9, 2009at Los Angeles, California.

[X]   (STATE)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Michael H. Pearson

1

CASE MANAGEMENT STATEMENT

1

PROOF OF SERVICE LIST

2

3  Heather B. Hoesterey, Esq.
   REED SMITH LLP
4  Two Embarcadero Center, Suite 2000
   San Francisco, CA  94111-3922
5  Telephone: (415)543-8700
6  Facsimile: (415) 391-8269

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE MANAGEMENT STATEMENT

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| JUAN DMITRUK, an individual | WELLS FARGO BANK, LTD., a California Corporation, et al. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Thomas V. Girardi (SBN 36603)<br>Neyleen S. Beljajev (SBN 251589)<br>Girardi / Keese<br>1126 Wilshire Boulevard<br>Los Angeles, CA 90017<br>213-977-0211 | David C. Powell (SBN 129781)<br>Heather B. Hoesterey (SBN 201254)<br>Reed Smith LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105-3659<br>415-543-8700 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** according to proof.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. section 78aa; 28 U.S.C. section 1331; 28 U.S.C. section 1337; Complaint alleges causes of action for violation of 15 U.S.C. sections78j(b) and 78t.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☒ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV09-77

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No   [ ] Yes

If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No   [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[ ]   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Wells Fargo Bank, Ltd. - Los Angeles | other defendants - Delaware |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date October 23, 2009

Heather B. Hoesterey, Esq.

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV09- 7734 MMM (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.